NUMBER 13-10-588-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

IN THE INTEREST OF
M.L.N. AND A.S.N., CHILDREN

                                                                                                                     
  

 

On appeal from the 135th
District Court 

of Victoria County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices Garza,
Vela, and Perkes 

Memorandum Opinion by
Justice Vela

 

            This is an appeal from an order terminating
the parental rights of appellant, R.A.N., to his two children, a son, M.L.N.
and a daughter, A.S.N.  In his sole issue on appeal, appellant argues that the
trial court violated his right to equal protection under the fourteenth
amendment of the United States Constitution because the reasons for termination
were that appellant was an unemployed, indigent person with a disability.   See
U.S. Const. amend. XIV.  We
affirm.

I. Background

The State, through the Texas Department
of Family and Protective Services, filed its original petition on March 26,
2009, seeking managing conservatorship and potential termination of the
parental rights of appellant, R.A.N., and D.R.N., the children=s
mother and appellant’s wife.  After a hearing was held on March 17, 2010, the
trial court terminated the mother’s parental rights to the children.  With
respect to appellant, the trial court stated:  “I’m going to continue a
decision in [appellant’s] termination for six months. At the end of six months
if he has not reached a proficiency level that the professionals deem necessary
for him to continue training to have the children returned to him, I’ll
terminate his rights.”  The State later sought an order to dissolve the
suspension of the earlier termination order and terminate appellant’s parental
rights.  

On October 1, 2010, the trial court held
a hearing on the State’s request to terminate appellant’s parental rights.  The
trial court took judicial notice of its file, which included the order in which
he terminated D.R.N.’s parental rights and suspended the termination order for six
months with respect to appellant.  The trial court also admitted into evidence
the entire transcription of the earlier hearing on the motion to terminate
appellant’s rights.  The trial court admitted into evidence the plan of service
that had been set up for appellant to follow.  The plan included weekly
counseling, addressing his own medication needs, maintaining safe and hazard-free
housing, and the requirement that appellant be able to show he is able to financially
care for the children.

 

Christy Hartly-Harvey, with the
homemaker services program, testified at the October hearing, as well as at the
initial hearing.  At the October hearing, she testified that appellant had
accomplished none of goals set forth for him in the service plan.  He initially
acquired a residence that was not adequate to house two small children.  There
was no running water, no electricity, the floor was rotting, and there were
nails protruding from the base boards.  She stated that she last saw appellant
on August 17, and he missed an appointment on August 31.  Since that time, she
had not had contact with appellant.  At the earlier hearing, when asked about
the parenting abilities of appellant and his wife, Hartly-Harvey concluded that
she did not believe Aeither one of them has the
capability to parent their children effectively and nurturing—you know, being
nurturing parents.  I think they both have the desire but I don=t
think they have the capability.@  She felt that neither
parent has the ability to teach the children right from wrong, to resolve
conflicts, to teach them how to resolve conflicts, or to show the children
proper affection. 

Catherine Parsons-Key, a licensed
professional counselor, testified at the October hearing that she began
counseling with appellant in the middle of July.  Appellant kept all of his
weekly appointments with her from July 13 through August 24.  On September 2,
he did not come to his appointment and did not explain or reschedule.  During
the counseling sessions, she spoke with appellant about his background,
including his mental illness and his childhood that had been spent in DPS
care.  She opined that during the time she counseled with him, no progress was
made.  He could not get the housing arranged and could not get anything
accomplished outside of the counseling realm.  Parsons-Key stated that she was
not sure improvement would happen.  Based on the six sessions she had with
appellant, she did not think more time would have helped, but qualified her
answer by agreeing that it might have.  She informed the trial court that she
did not believe appellant was competent to raise and nourish two special needs
children. 

Alma Straney, the DPS caseworker
assigned to appellant, testified that she took over his case in May 2010,
visited with appellant at the apartment and noted he had cleaned the bathroom
and the tub, but stated that the apartment was in no condition for children to
live there.  She testified that appellant did not fulfill the requirements of
the plan of service.  At the time of the October hearing, appellant was living
on the streets.  Straney noted that appellant visited with the children
regularly, only missing one visit in September.  

Appellant testified at the October hearing
that he had stayed away from his wife since her rights had been terminated,
returning only once to retrieve his personal items.  He said he looked for a
home and had been applying for jobs.  In August, he moved out of the apartment
because it was not manageable and the landlord was not making necessary repairs.

Prior to the October hearing, the trial
court heard evidence that appellant had relinquished his parental rights to the
two children in 2004.  Evidence offered at the earlier hearing showed a pattern
of violent altercations between appellant and his wife in the children=s
presence.  According to D.R.N., she and appellant had arguments that the
children witnessed.  She described one instance where appellant grabbed her by
the chain on her neck and attempted to choke her.  Later, her daughter
attempted to do the same thing to her because she wanted to Abe
like daddy.@  Appellant testified that he had used
drugs with his wife.  He also testified that he receives disability benefits,
has been hospitalized several times for psychological problems, has been arrested
for possession of a controlled substance and criminal mischief, and has an
addiction to pills. 

  At the earlier hearing, D.R.N.
testified that the home was not a safe place for the children while she and her
husband resided there.  Appellant agreed that the children were not safe while
the two of them were at home.  The experts who testified at the earlier hearing
all agreed that the parental rights of both parents should be terminated based
on the fact that they had worked with both of them extensively and saw no
progress with respect to parenting skills.

            At the conclusion of the October 1, 2010
hearing, the trial court found that the appellant:  (1) knowingly placed or
knowingly allowed the children to remain in conditions or surroundings which endanger
the physical or emotional well-being of the children; (2) engaged in conduct
which endangered the physical or emotional well-being of the children; and (3) failed
to comply with the provisions of a court order that specifically established
the actions necessary for him to have the children returned.  The trial court
also found that the State had made reasonable efforts to return the children to
appellant. 

  II. Standard of Review and Applicable Law

            In hearings regarding the termination of
parental rights, due process requires that the State prove its case for
termination by clear and convincing evidence.  In re J.F.C., 96 S.W.3d
256, 263 (Tex. 2002) (citing Santosky v. Kramer, 455 U.S. 745, 769
(1982); In re G. M., 596 S.W.2d 846, 847 (Tex. 1980)).  The clear and
convincing standard is defined as the Ameasure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@  Tex.
Fam. Code Ann. ' 101.007 (West 2008).  The
Equal Protection Clause provides that no state shall “deny to any person within
its jurisdiction the equal protection of the laws,” which directs that all
persons similarly situated should be treated alike.  U.S. Const. amend. XIV, § 1; In re J.M.C., 109 S.W.3d
591, 597 (Tex. App.–Fort Worth 2003, no pet.).   








Taking this elevated standard of review
into consideration, an appellate court, reviewing the legal sufficiency of the
evidence in a parental termination case, must determine whether a fact-finder
could have reasonably formed a firm belief or conviction that the grounds for
termination were proven.  In re J.F.C., 96 S.W.3d at 265-66.  All
evidence should be reviewed Ain the light most favorable
to the judgment.@  Id. at 266.  This
means that an appellate court must assume that the fact-finder resolved any
disputed facts in favor of its finding if a reasonable fact-finder could have
done so.  An appellate court must also disregard all evidence that a reasonable
fact-finder could have disbelieved.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  AIf [an appellate court]
determines that no reasonable fact-finders could form a firm belief or
conviction that the matter that must be proven is true, then that court must
conclude that the evidence is legally insufficient.@  In
re J.F.C., 96 S.W.3d at 266.

Similarly, the clear and convincing
standard of review in a parental termination hearing requires a higher level of
evidence in order to be factually sufficient.  See In re C.H., 89 S.W.3d
17, 25 (Tex. 2002).  The appellate standard for reviewing parental termination
factual findings is whether the evidence is such that a fact-finder could have reasonably
formed a firm belief or conviction about the truth of the State's allegations. 
Id.

In reviewing the evidence for factual sufficiency,
we must determine whether, on the entire record, a fact-finder could reasonably
form a firm conviction or belief that the parent violated a provision of
section 161.001(1) of the family code and that the termination of parental
rights would be in the best interest of the child.  In re M.C.T., 250
S.W.3d 161, 168 (Tex. App.–Fort Worth 2008, no pet.) (citing In re C.H.,
89 S.W.3d at 28).  AIf, in light of the entire
record, the disputed evidence that a reasonable fact-finder could not have
credited in favor of the finding is so significant that a fact-finder could not
have reasonably formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient.@  Id. 
(citing In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006)).  

When termination is based on multiple
grounds under section 161.001(1), a court of appeals must affirm the order if
the evidence is sufficient to support any one of the grounds found by the
district court.  See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).








III. Statutory Grounds for Termination of Parental
Rights

Section 161.001 of the Texas Family Code
sets forth the grounds upon which the court may involuntarily terminate a
parent-child relationship.  Tex. Fam.
Code Ann. ' 161.001 (West Supp. 2010). 

The trial court may order termination if
it finds by clear and convincing evidence that the parent has knowingly placed
or knowingly allowed the child to remain in conditions or surroundings which
endanger the physical or emotional well-being of the child.  Id. '
161.001(1)(D).  Endangerment is defined as exposing to loss or injury, to
jeopardize.  In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.–Fort Worth
2003, no pet.).  Under subsection (D), we examine the evidence related to the
environment of the child to determine if the environment is the source of
endangerment to the child=s physical or emotional
well-being.  In re D.T., 34 S.W.3d 625, 632 (Tex. App.–Fort Worth 2000,
pet. denied).  








The parent=s
conduct does not necessarily have to be directed at the child.  See Vasquez
v. Tex. Dep't of Protective & Regulatory Servs., 190 S.W.3d 189, 195
(Tex. App.–Houston [1st Dist.] 2005, pet. denied).  Conduct that subjects a
child to a life of uncertainty and instability endangers a child=s
physical and emotional well-being.  See In re S.D., 980 S.W.2d 758, 763
(Tex. App.–San Antonio 1998, pet. denied).  A parent's mental state may be
considered in determining whether a child is endangered if that mental state
allows the parent to engage in conduct that jeopardizes the physical or
emotional well-being of the child.  In re J.I.T.P., 99 S.W.3d 841, 845
(Tex. App.–Houston [14th Dist.] 2003, no pet.); see also In re C.M.B.,
204 S.W.3d 886, 895 (Tex. App.–Dallas 2006, pet. denied).  Abusive or violent
conduct by a parent may produce an environment that endangers the physical or
emotional well-being of the child.  In re J.T.G., 121 S.W.3d 117, 125
(Tex. App.–Fort Worth 2003, no pet.).  The requisite endangerment may be found
if the evidence shows a parent's course of conduct that has the effect of
endangering the child's physical or emotional well-being.  See Smith
v. Sims, 801 S.W.2d 247, 250 (Tex. App.–Houston [14th Dist.] 1990, no
writ). 

In this case, the trial court found that
appellant had:  (1) knowingly placed or allowed the children to remain in
conditions or surroundings which endanger the physical or emotional well-being
of the children; (2) engaged in conduct or knowingly placed the children with
persons who engaged in conduct which endangers the physical or emotional
well-being of the children; and (3) failed to comply with the provisions of a
court order that specifically established the actions necessary for the return
of the children who have been in the permanent or temporary managing
conservatorship of the Department of Family and Protective Services for not
less than nine months as a result of the children=s
removal from the parent under chapter 262 for the abuse or neglect of the
children.  Id. '
161.001(1)(D), (E), (O).  

IV.  Analysis








Here, appellant does not challenge any
of the specific grounds that the trial court found to support its decision that
appellant’s rights should be terminated.  Rather, appellant urges that he was
denied equal protection because his rights were terminated based on poverty,
unemployment and disability.  Appellant does not point to any cases to show
that he was denied equal protection.  His only argument is that if he had more
money and was not disabled, he would have had the resources to have his
children returned to him.  To assert an equal protection claim, a party must
establish that the challenged statute resulted in him being treated differently
than others similarly situated.  In re J.M.C., 109 S.W.3d at 597. 

The trial court found three grounds upon
which to terminate appellant’s rights.  And the grounds are supported by
evidence, which was essentially unchallenged in this appeal.  Appellant has not
established that the statute resulted in him being treated differently.  We
have carefully reviewed this record.  Looking at all of the evidence in the
light most favorable to the trial court=s
determination, we hold that a reasonable trier of fact could reasonably have
formed a firm belief or conviction that appellant knowingly placed or allowed
the children to remain in conditions or surroundings that endangered their
physical well-being and that he engaged in conduct or knowingly placed the
children with persons who engaged in conduct that endangered the children=s
physical or emotional well-being.  Both legally and factually sufficient
evidence support the trial court=s
findings under section 161.001(1)(D) and (E) of the Texas Family Code.  Tex. Fam. Code Ann. '
161.001(1)(D), (E).  The evidence also established that appellant clearly
failed to comply with the service plan, id. § 161.001(1)(O), and the
evidence supports termination on this ground, as well.  Because we find that
the trial court did not rely solely upon appellant’s poverty, disability, and
employment status, but considered all of the relevant statutory factors to be
utilized before terminating a parent’s rights, we overrule appellant’s sole
issue. 








V. Conclusion

            Having
overruled appellant=s sole issue, we
affirm the judgment of the trial court.  

 

 

 

                                                                        ROSE
VELA

                                                                                    Justice

 

Delivered and filed
the 

5th day of May, 2011.